Dear Senator Casanova:
Our office has recently received your opinion request. In that request, you asked specifically, "If a pregnant woman goes into the hospital for delivery and tests positive for cocaine, marijuana and/or, other illegal drugs does that warrant an investigation by the Office of Community Services, regardless of whether the newborn shows symptoms or not? In such event does a physician have the authority and/or discretion to keep the newborn in the hospital until an investigation is conducted? Furthermore, does such use of drugs by the pregnant mother constitute a low, intermediate or high risk and who decides what level of risk, the physician or the Office of Community Services?"
To address your questions we must first look to the duties and authorities of the Office of Community Services and then to the definitions and other statutory language provided by the Louisiana Children's Code. These provisions provide for the purposes and functions of the Office of Community Services as well as the definitions of abuse and neglect.
The Office of Community Services under the Department of Social Services provides for the public child welfare functions of the state, including but not limited to child protective services. (LSA-R.S. 36:477 C (1)). Under the provisions of Louisiana Children's Code Art. 612, the Office of Community Services investigates reports of "abuse" and "neglect" as defined in the Children's Code.
Children's Code Art. 603 provides in pertinent part, "As used in this title:
 (1) "abuse" means any one of the following acts which seriously endanger the physical, mental, or emotional health and safety of the child: (a) The infliction, attempted infliction, or, as a result of inadequate supervision, the allowance of the infliction or attempted infliction of physical or mental injury upon the child by a parent or any other person."
 (14) "Neglect" means the refusal or willful failure of a parent or caretaker to supply the child with necessary food, clothing, shelter, care, treatment, or counseling or any injury, illness or condition of the child, as a result of which the child's physical, mental or emotional health is substantially threatened or impaired. Consistent with Article 606(B), the inability of a parent or caretaker to provide for a child due to inadequate financial resources shall not, for that reason alone, be considered neglect. Whenever, in lieu of medical care, a child is being provided treatment in accordance with the tenets of well-recognized religious method of healing which has a reasonable proven record of success, the child shall not, for that reason alone, be considered to be neglected or maltreated. However, nothing herein shall prohibit the court from ordering medical services for the child when there is substantial risk of harm to the child's health or welfare.
Also, the term "child" has been defined in Article 603 of Louisiana Children's Code. It states that a "child" means a person under eighteen years of age who, prior to juvenile proceedings, has not been judicially emancipated under Civil Code Article 385 or emancipated by marriage under Civil Code Articles379 through 384.
Under the scenario presented, wherein a pregnant woman presents herself for delivery and tests positive for illegal drugs, it is our opinion that such an incident might fall under the definition of neglect under Louisiana Children's Code Article 603 and initiate a court ordering medical services for the child due to a substantial risk of harm to the child's health or welfare. Such a report of abuse or neglect of a child would fall under the procedures required by Louisiana Children's Code Article 612. In such a case the local child protection unit of the department would promptly assign a level of risk to the child based on the information provided by the reporter. The determination as to the level of risk in accordance with the statute must be determined by the Office of Community Services on a case by case basis.
It is the opinion of this office that if a physician has evidence of neglect as discussed above, such physician should report such abuse or neglect to the local child protection unit of the Department of Social Services which would assign a level of risk to the child based upon the information provided by the reporter. The physician, however, does not have the authority or the discretion to keep the newborn in the hospital until an investigation is conducted. A court order should be sought to provide medical services for the child when there is a substantial risk of harm to the child's health or welfare.
I trust that the above information sufficiently addresses your concerns. If our office may be of further assistance, please do not hesitate to contact us.
Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: CHARLES H. BRAUD, JR. ASSISTANT ATTORNEY GENERAL
Senator Thomas H. Casanova, III, M.D. State Senator District 26 Post Office Box 1020 Crowley, LA 70527-1020
Date Received: Date Released: March 23, 2000
CHARLES H. BRAUD, JR. ASSISTANT ATTORNEY GENERAL